UNION FEED COMPANY *vs.* G. H. LUCE, Tax Collector.

QUESTION RESERVED BY PRESTON, J., ON APPEAL FROM POLICE
COURT, HONOLULU.

APRIL TERM, 1887.

JUDD, C.J., McCULLY, PRESTON and BICKERTON, JJ.   FORNAN-
DER, J., absent.

The plaintiff made a return of its property liable to taxation, on the
second day of August, 1886.   The tax assessor had made the
assessment of all those persons who had returned their property
according to law on the 31st of July, and had entered the same on
his books by the first day of September, but had not made and
completed two copies of his tax-list until the first day of Novem-
ber.   The assessor raised the amount of the plaintiff's assessment
above the return.

Held, that such assessment was valid, and that plaintiff could not
recover the amount of taxes paid on such increased assessment.

Judgment of Police Court affirmed.

OPINION OF THE COURT, BY BICKERTON, J.

This matter comes here on an agreed statement of facts and
questions of law, reserved for the consideration of the Court in
Banco by Mr. Justice Preston, sitting to hear appeals from the
Police Court of Honolulu, where judgment was entered for
defendant on February 16, 1887.   The complaint in the Police
Court is as follows :   *   *   *   " That said corporation is
engaged in business in the district of Honolulu, and owns pro-
perty situated in said district, liable to taxation ; that on or
before the first day of July last. they made a sworn return in
writing of all the property of said corporation in said district
liable to taxation, and on said day delivered the same to the
assessor of taxes for said district; that on the first day of Octo-
ber, the treasurer of plaintiff corporation made application to
said assessor to ascertain the amount of the assessment made
against said corporation ; that no assessment at that time had
been made against said company ; that subsequently to said first

day of October, the assessment against said corporation was raised $20,832.58 above the amount of its return; and plaintiff alleges that said assessment was not made within the time prescribed by law and was illegal, and that it is not liable to pay the tax thereon. And plaintiff further says that on the fifteenth day of December instant it paid under protest to said defendant the amount of the taxes assessed against it: to wit, the sum of $253.50. And plaintiff says that said defendant is indebted to it in the sum of $156.54—the amount of tax upon the illegally increased assessment against it; and the defendant, though requested, has not paid the same, but refuses so to do.

"And plaintiff further claims that defendant is indebted to it in the sum of $156.54 for so much money had and received by the defendant to plaintiff's use, which defendant, though requested, has not paid, but refuses so to do.

"Wherefore plaintiff prays process to cite said defendant to appear and answer this complaint, and for judgment for said amount and costs."

The agreed statement of facts and questions of law reserved are as follows:

"It is agreed that the facts material to the issue raised in the above action are as follows:

"That the plaintiff's return of property liable to taxation was not made until August 2, 1886.

"That the tax-assessor for the district of Honolulu had made the assessments of all those who had made returns on or before July 31, 1886, and had properly entered the same on his books by the first day of September, 1886; but said assessor had not made and completed two copies of his tax-list until November 1st of said year.

"It is agreed that the following questions of law shall be heard by the Supreme Court in Banco, if Mr. Justice Preston will consent to reserve the same:

"1. Can the plaintiff in this action be heard to attack the validity of said assessment, he not having made a return on or before July 31st?

"2.  Was the assessment made by said assessor a valid one ?

"It is further agreed that if plaintiff is held entitled to recover, judgment shall be entered in his favor for the amount sued for and costs."

It will be seen that plaintiff's return to the assessor of its property was not made until August 2, 1886.

This case comes under the Act of 1882, relating to internal taxes ; the Act of 1886 amendatory to the Act of 1882, approved 15th of October, 1886, does not affect this case, it not being in force at the time of the assessment.

Section 20 of the Law of 1882 reads : "The returns hereinafter required to be made shall, when made by a company being a corporation, be made by the president, treasurer, secretary or manager ; or, if a firm, by some member thereof."  Section 22 provides that such persons "shall be answerable for the performance of all such acts, matters or things, as are required to be done by virtue of this Act, in order to the assessment of the property which he represents and paying taxes thereon ; and shall be under and subject to the like penalty or liability for any neglect, refusal or default as any other person."  Section 32 provides that the assessor shall give notice of the time and place during the month of July where persons shall render to the assessor a statement of all property, etc., belonging to them, or of which they had possession or control on the first day of July then immediately preceding.

Section 33 reads : "Every person owning any property, real or personal, whether entitled to exemption or not, shall within the time prescribed in such notice as aforesaid, prepare and deliver to the assessor at the place mentioned by him in such notice a statement in writing, signed by the person making the same."

Section 35 reads : "If any person shall refuse or neglect to make and deliver to the assessor, within the time prescribed, a statement containing the particulars required in Section 33 or 34, or shall decline to make oath as to the accuracy of the same, the assessor may make such assessment according to the best

information within his reach, and the same shall be final, binding and conclusive upon all parties, and shall not be subject to appeal."

Section 37 reads: "It shall be the duty of such assessor, on or before the first day of September in each year, to make and complete two copies of his tax-list as hereinbefore described."

Section 38 provides that the assessor shall attend on at least six days between the first and fifteenth days of September at some convenient place or places in his district with his tax-list, which shall be open to the inspection of all persons liable to taxation in the district.

Section 40 provides that any person whose name may appear on such tax-list, and who shall have made his returns to the assessor as hereinbefore provided, may appeal from any increase beyond the amount which would be payable by him according to his return, etc., etc.

What is the object in providing that the tax-list shall be open for inspection? It can only be that those who have complied with the law in making their returns, and who would have the right of appeal if the assessment was in excess of their returns, might avail themselves of that right. We hold that when a person has lost his right of appeal by neglecting to make his return within the time specified, he cannot afterwards insist on his right to inspect the tax-list at a given date for the purpose of appealing. In this case, the plaintiff corporation could not be considered as injured, for by its own neglect it had forfeited its right of appeal. An inspection of the tax-list would not be of any benefit to it. It is certain that these returns are intended to be used and made the basis of the assessment, and of course required to be furnished before making the assessment. If there is no return, the statute directs what course the assessor shall pursue, viz., to make the assessment according to the best information within his reach, which shall be binding and conclusive upon all parties, and shall not be subject to appeal.

It is contended for plaintiffs that the assessor having failed to make two copies of the tax-list on or before the first day of

September, that the assessment was void, and therefore the plaintiff must recover in consequence of that irregularity. We think not. We hold that the statute in that respect is directory, and any irregularity in this respect can be complained of by a tax-payer only to the extent of his injury. XII. U. S. Digest, 792, citing 15 Nev., 385.

"An assessment being essential to the validity of a tax, a formal assessment, although not made in the mode contemplated by the law, if not inequitable, will support a levy otherwise legal." XII. U. S. Digest, 791, citing 11 Nev., 344.

Under the Alabama Revenue Law of 1868, the failure of the county assessor to lay before the Court of County Commissioners a book of assessments, and to enter all taxable property on the assessment rolls, or his omission of any taxable property from the book or lists, does not invalidate the levy. XIII. U. S. Digest, 857, citing 65 Ala., 391.

"As a general rule statutory provisions regulating the assessments are mandatory, where their object is the protection of the tax payers against spoliation or excessive taxation; but regulations designed for the information of the assessor or other officers, and intended to promote dispatch, method, system and uniformity in modes of proceeding, will be held merely directory when the assessment is so made and evidenced as to be understood, and clerical and ministerial duties, the observance or non-observance of which do not injuriously affect the tax-payer, are merely directory." State vs. Jackson Co., 65 Ala., 142, cited in XIII. U. S. Digest, 857.

"Failure of assessors to return their rolls within the statute time does not invalidate tax." 12 Nev., 396, cited in XIII. U. S. Digest, 857.

In the case of Stockle et al. vs. Selsbee, in 41 Mich., 617, Judge Cooley uses this language: "The time has gone by, if it ever was, when the proceedings of taxing officers are to be criticized with microscopic nicety, and the exact time and method of every step examined, to detect a departure from the law, however insignificant or unintentional. The policy of the law is

that parties shall pay legal taxes even though there may be some irregularity in demanding them, and that they shall complain to the Courts of those errors only which may injure them. The possibility of collecting the state revenue depends upon the observance of this policy, and we do not feel called upon to examine in detail every irregularity which a record may show. · It is probable that in no tax case have all the proceedings been exactly and punctiliously correct, but they are sufficiently so for legal purposes in any case, if no error is committed which can prejudice the person." Judges Marston and Graves concurred. *Clarke vs. Crane,* 5 Mich., 151; *Smith vs. Crittenden,* 16 Mich., 152; *Bird vs. Perkins,* 33 Mich., 29, are cited in that case.

In the opinion of Chief Justice Shaw in the case of *Porter vs. County Commissioners of Norfolk,* in 5 Gray, 367, the position taken by us in the case now before us is well supported. The most recent case that we have found is *People vs. Assessor of Wilson;* opinion by Judge Finch, of the Court of Appeals of New York State, dated March 8, 1887, and published in the Albany Law Journal of April 9, 1887, in which we find the following language: " A failure to comply with Section 9 of Chapter CCLXIX., Laws of 1880, which requires that the completed and verified assessment roll shall be delivered to the Town Clerk 'on or before the first day of September' will not render the assessment void. The sole object of the provision of the Act requiring the assessors to publish a notice of the delivery of the assessment roll to the Town Clerk is to set running the fifteen days within which parties aggrieved may sue out their writ. Omission to publish the notice does not affect the validity of the assessment."

We find that the plaintiff cannot recover, and the judgment of the Lower Court for the defendant is affirmed.

*F. M. Hatch,* for plaintiff.

*A. P. Peterson,* for defendant.