EATON v. HOPE.

1. SALES—WARRANTIES—EVIDENCE—REMOTENESS.

Testimony of witnesses, who had owned a mare before defendant, that it had no bad habits or traits when they owned it several years before it was sold to plaintiffs, was not too remote, in an action for breach of warranty, where defendant claimed that the horse acquired the alleged vices or habits after plaintiffs purchased it.

2. TRIAL—ARGUMENT—ISSUES—MISCONDUCT OF COUNSEL.

Upon disputed testimony concerning the qualities of a mare which plaintiffs claimed had the habit of kicking, the respective vocations of plaintiff and defendant who had testified were a proper subject of comment in the argument.

3. SALES—JOINT PURCHASE—HUSBAND AND WIFE.

There being a dispute whether the plaintiffs' who were husband and wife, had jointly purchased the mare, the court was correct in submitting the question to the jury.

4. SAME.

Instructions to the jury that plaintiffs had the burden of proof to establish every allegation by a preponderance of the evidence, was error: the plaintiffs could recover if they proved any one of the several breaches alleged and relied upon.

Error to Kalamazoo; Knappen, J. Submitted June 3, 1913. (Docket No. 11.) Decided October 10, 1913.

Assumpsit by Fred R. Eaton and Bernice E. Eaton against Chauncey Hope for breach of warranty in the sale of a mare to plaintiffs. Judgment for defendant. Plaintiffs bring error. Reversed.

*Fred A. Mills* and *Harry C. Howard,* for appellants.

*Claude S. Carney,* for appellee.

KUHN, J.   The plaintiffs brought suit to recover damages from the defendant for an alleged breach of warranty arising from the sale of a horse.   The breaches of warranty relied upon are stated in plaintiffs' declaration as follows:

"That said horse, to wit, a mare, being the said horse taken by the plaintiffs from said defendant, was not as said defendant represented, and was not free from vice, and was not all right in every spot and place, and would not work double as said defendant represented, and said horse was not kind and gentle but was what is known as a 'switcher and kicker,' and said horse had a very bad disposition."

The trial resulted in a verdict of no cause of action, and plaintiffs bring the case to this court by writ of error.   The errors complained of are grouped by plaintiffs' counsel in their brief as follows:

"*First.*   Errors in the ruling of the court, made before submitting the case to the jury.

"*Second.*   Improper argument of defendant's counsel.

"*Third.*   Errors in the charge:"

As to the first, objection is directed principally to the testimony of Mr. and Mrs. Wightman, who had owned the mare from the time she was three years old until she was six, when they sold her to the defendant, Hope.   They were allowed to testify as to what her habits were during the time they had her, and the objection is now urged that this was too remote to be of any assistance to the jury in determining what her habits were at the time of the sale, several years later.   In view of the claims made by plaintiffs that the horse had been warranted to be free from vice and had no bad habits, and the claim made by the defendant that if the mare had any vicious habits they were such as she acquired after the sale to the plaintiffs, because of having foaled her colt, it was proper to allow considerable latitude in showing the

habits of the mare to determine whether or not she had acquired the vicious habits before or after the sale to the plaintiffs. For the same reason there was no error in admitting the testimony of the other wit nesses examined as to the habits of the mare.

During the argument to the jury of one of the attorneys for the defendant, the following occurred:

"You men, or most of you, are farmers, and most of the counsel have had some experience on farms, and I want you to consider this case on the one hand between a young banker and on the other hand against an old farmer.

"*Mr. Howard:* I object and except to this line of argument. It is not a proper line of argument to hold up to the jury the fact that one of the plaintiffs is a banker and that the defendant is or has been a farmer. These matters should have no bearing upon the case.

"*The Court:* I think it is proper to allude to the respective vocations of the parties.

"*Mr. Howard:* This is going beyond that, and I take an exception."

The vocation of the parties to the controversy was brought out by the evidence, and, as their experience with horses would necessarily be helpful to the jury in determining what weight to give their testimony in determining the various questions of fact submitted to them, we do not find it prejudicial for counsel to have called their attention to the vocations of the parties shown by the evidence and without using any abusive or extravagant language in commenting thereon.

At the close of plaintiffs' proofs, counsel for the defendant requested the court to direct a verdict because there was a misjoinder of plaintiffs; it being contended that the proofs showed that the contract of purchase was made with Fred Eaton alone and that the note given in payment of the horse was signed by his wife, Bernice Eaton, merely as a surety. The court thereupon gave counsel the opportunity to

amend the declaration by striking out the name of the coplaintiff, Mrs. Eaton. Counsel decided, however, to stand upon the declaration as originally filed, and the court thereupon submitted to the jury the question as one of fact and charged them in the following language:

"In determining who were the purchasers of the horse, you have a right to consider that both Mr. and Mrs. Eaton signed the note, intending that both should be bound as principals. If Mrs. Eaton had signed merely as surety for her husband, under the laws of the State of Michigan she would not be bound, but in Michigan there is no rule to prevent a married woman from becoming a joint debtor with her husband on a proper consideration. And if you find that it was the intention of the parties and the parties meant that she should become a joint debtor for this mare, a joint purchaser, consequently a joint debtor, then you would be justified in concluding that she was joint owner of the mare."

There was some testimony, though meager, to show that the horse was purchased by plaintiffs jointly; that it was a joint contract; and also evidence to prove that Fred Eaton alone had purchased the horse and his wife did not become connected with the transaction until a signer or surety to the note was demanded. There being a conflict in the evidence on this point, it was properly submitted to the jury.

Attention is called to various parts of the court's charge, and exception is taken to the following, which was given:

"I am also requested to charge you by the defendant: (7) You are instructed that the plaintiffs have the burden of proof upon them, and it is necessary, to entitle them to recover, that they should prove every essential claim by a fair preponderance of the evidence; to entitle them to recover they must prove each and every allegation in this case by a fair preponderance of the proofs; and, if you fail to find any one of the allegations on the part of the plaintiffs

made out by such preponderance, then you will find in favor of the defendant and render a verdict of no cause of action."

This part of the charge was one of the defendant's requests to charge and was given as such. ' In giving it the court called particular attention to it. It was an incorrect statement of the law applicable to the case, because it was not necessary for the plaintiffs to prove each and every claim made by them as to the warranties. *Lepard* v. *Railroad Co.*, 166 Mich. 373 (130 N. W. 668, 40 L. R. A. [N. S.] 1105). It was sufficient if the plaintiffs established by a fair preponderance of the evidence that any one of the allegations covered by the warranty was true. It cannot be said, under these circumstances, that the error was cured by the rest of the charge, as it is to be presumed that the jury may have followed the law as given to them in this request to charge. *Grand Rapids, etc., R. Co.* v. *Monroe*, 47 Mich. 152 (10 N. W. 179) ; *Madill* v. *Currie*, 168 Mich. 546 (134 N. W. 1004).

Because of this error, the case must be reversed, and a new trial granted.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.