PETTERSCH v. GRAND RAPIDS GAS LIGHT CO.

1. APPEAL AND ERROR—VERDICT OF JURY CONCLUSIVE IF CASE PROPERLY PRESENTED.

Where there is a direct conflict in the testimony, if the facts are properly presented and submitted to the jury under a legal charge, its verdict is conclusive.

2. GAS—EXPLOSIVES—EVIDENCE.

That ordinary gas is explosive is well known.

3. SAME—TRIAL—INSTRUCTIONS—DUTY OF GAS COMPANY TO INSPECT AND REPAIR PIPES.

In an action against a gas company for injuries to a post office employee, alleged to have been caused by an explosion of gas collecting under the post office loading dock due to defendant's negligence, the charge of the court as to defendant's duties in relation to inspection and preventing leaks, *held*, correct.

4. TRIAL—CONTRADICTORY INSTRUCTIONS.

Where instructions give to the jury contradictory and conflicting rules for their guidance, which are unexplained, and following either of which would or might lead to different results, then the instructions are inherently defective and erroneous, and this is true though one of the instructions correctly states the law as applicable to the facts of the case.

5. SAME—CONTRADICTORY INSTRUCTIONS AS TO DUTY TO INSPECT.

In an action against a gas company for personal injuries alleged to have been caused by a gas explosion due to defendant's failure to inspect and repair its mains, an instruction purporting to cover essential elements of the case which entirely ignored plaintiff's claim of defendant's negligent failure to inspect was error, though in another instruction defendant's duty to inspect was properly submitted.

6. PARTIES—REAL PARTY IN INTEREST.

In an action for the negligent death of a post office employee, the trial court correctly ruled that the administratrix of deceased's estate was the real party in interest rather than the United States government.

7. WITNESSES—INTEREST OF WITNESSES TOO REMOTE TO CONSIDER.
    In an action against a gas company for the negligent death of
    a post office employee, an instruction by the trial court that
    the jury might consider the interest of witnesses for plaintiff
    who were government employees, and that they bear a certain
    relationship to the government with reference to compensation,
    was error; said interest being too remote for consideration.

8. APPEAL AND ERROR—MISCONDUCT OF COUNSEL.
    If counsel, well learned in the law, choose to deliberately imperil
    the interests of their clients by improper advertisement of a
    fact well known to be prejudicial to a fair and impartial con-
    sideration of the case by the jury, the resulting judgment
    should be set aside, even though the party who suffers is the
    innocent client instead of offending counsel.

Error to Kent; Perkins (Willis B.), J.    Sub-
mitted October 18, 1928.   (Docket No. 42, Calendar
No. 33,034.)   Decided December 4, 1928.   Rehearing
denied March 29, 1929.

Case by Theresa M. Pettersch, administratrix of
the estate of Herman Pettersch, deceased, against the
Grand Rapids Gas Light Company, for the negli-
gent killing of plaintiff's decedent.   Judgment for
defendant.   Plaintiff brings error.   Reversed.

*J. T. & T. F. McAllister,* for appellant.

*Travis, Merrick, Warner & Johnson (Stuart E.
Knappen,* of counsel), for appellee.

POTTER, J.   Plaintiff, administratrix of the estate
of her deceased husband, sued defendant for negli-
gently injuring her husband, causing his death.   It
is plaintiff's claim that her husband, an employee
of the post office department, was injured by an ex-
plosion of gas negligently allowed to escape and col-
lect under the loading dock at the post office in
Grand Rapids, Michigan, which injuries caused his
death.   There is a direct conflict in the testimony as

to the cause of the explosion. Most of the questions involved were for the jury. If the facts were properly presented and submitted to the jury under a legal charge, its verdict is conclusive. The question to consider is whether there was legal error in the trial and submission of the case.

The plaintiff counted, in her declaration, upon the defendant's negligence in installing a defective gas main and in negligently failing to inspect the main after installation to determine whether or not it leaked. Much testimony was introduced tending to show gas had been escaping from the main for a considerable period of time; that the defendant, in the exercise of reasonable care and diligence, ought to have discovered such escaping gas and stopped the leak. There is no dispute as to the duty of inspection arising from the use of the streets for the laying of mains for the distribution of useful, though dangerous, gas. That ordinary gas is explosive is well known. The general rules covering the duties of a gas company in relation to its mains are stated in 28 C. J. p. 590; 1 Thornton on Gas and Oil (4th Ed.), p. 1415.

The trial court recognized this issue tendered by plaintiff's declaration, supported by the evidence, and sustained by law. He charged the jury:

"It is further claimed on the part of the plaintiff that it became and was the further duty of the gas company to use due care and caution and diligence after turning on the gas in its mains to detect any leaks in its pipes from which large quantities of gas might be escaping, and to properly repair the pipes and prevent the leak and the escaping of the gas therefrom.

"It is further alleged and claimed by the plaintiff that the defendant company, notwithstanding these various duties, did not carefully perform them,

but carelessly and negligently furnished pipes unsuitable for the purpose for which they were intended, not of a quality to prevent the escape of gas therefrom, and that it failed to inspect the pipes as they were put into the trench, in order to discover obvious defects therein; that it failed to use reasonable care and caution in the selection and laying of pipes in this main, and by reason of such neglect and failure permitted a defective pipe to be laid therein from which gas could and did escape to the adjoining premises; and that it failed to properly inspect the pipes laid in this main after the gas had been turned on in order to discover any leaks in the main and that, as a result of this neglect of duty, gas did escape from this main through the adjoining soil, gathered under this loading dock, became exploded, causing the injuries complained of in this case.''

By this part of his charge, the court correctly covered this phase of the case.

The court also charged the jury, at the request of the defendant:

"The jury is instructed that the plaintiff, in order to recover, must prove by a preponderance of the evidence the several elements material to a determination of this case; first, that gas accumulated under the loading dock; second, that such gas came from the Division street main; third, that it exploded; fourth, that the gas escaped from the Division street main because of a defective pipe; fifth, that such defective pipe had been installed through the negligence of the defendant in failing to use ordinary and reasonable care in inspecting and testing the pipe before placing it in the ground. I think that is a very good statement of the several elements of this case which you are to determine in order to reach your conclusion. If the plaintiff fails to prove or establish any one of the above matters by a pre-

ponderance of the evidence, your verdict will be for the defendant.''

An examination of this summary demonstrates that it entirely ignores plaintiff's claim of defendant's negligent failure to inspect, set forth at length in plaintiff's declaration and sustained by evidence tending to support it. This charge, under the facts, eliminated from the consideration of the jury an important element of plaintiff's case. It is in direct conflict with that part of the charge which the court had already given. The rule is thus stated in 14 R. C. L. pp. 777, 778, as follows:

''Where instructions give to the jury contradictory and conflicting rules for their guidance, which are unexplained, and following either of which would or might lead to different results, then the instructions are inherently defective and erroneous. And this is true though one of the instructions correctly states the law as applicable to the facts of the case. The reason for this is that where the instructions on a material point are contradictory, it is impossible for the jury to decide which should prevail, and it is equally impossible, after the verdict, to know that the jury was not influenced by that instruction which was erroneous, as the one or the other must necessarily be, where the two are repugnant. A further reason is that conflicting and contradictory instructions in effect leave the jury without instructions to guide them with reference to the law arising upon the evidence in the cause.''

This is the rule in Michigan. *Lake Shore, etc., R. Co.* v. *Miller,* 25 Mich. 274; *Grand Rapids, etc., R. Co.* v. *Monroe,* 47 Mich. 152; *Hyde* v. *Shank,* 77 Mich. 517; *Madill* v. *Currie,* 168 Mich. 546; *Lamb* v. *Township of Clam Lake,* 175 Mich. 77; *Silverstone* v. *Assurance Corp.,* 176 Mich. 525; *In re Bailey's Estate,* 186 Mich. 677; *Rathbone* v. *Railway,* 187 Mich. 586;

*In re Foerster's Estate,* 193 Mich. 440; *Barrett* v. *Insurance Co.,* 195 Mich. 209; *Steele* v. *Banninga,* 225 Mich. 547. This was error.

The defendant contended upon the trial that plaintiff was not the real party in interest, but that the government of the United States was the real party in interest. The trial court correctly ruled otherwise. *Cox* v. *Railway,* 238 Mich. 527. The defendant requested the court to charge the jury:

"29*h.* As bearing upon the interest of the employees of the government of the United States in this case, you have a right to consider that by the statute of the United States under which the plaintiff and her children are receiving compensation, she and they are required to repay the government from any recovery in this case going to her or her children, all sums heretofore paid to her or to them as compensation, and to credit the remainder upon future compensation to be paid, thus relieving the government therefrom to the extent of such recovery; and that the United States employees' compensation commission, through its attorney, solicited and procured plaintiff to commence this suit and that under the compensation statute she was compelled to accede to this request or forfeit further compensation.

"29*i.* You are entitled to consider, as bearing on the actual interest of plaintiff in this case, that by the statute of the United States under which the plaintiff and her children are receiving compensation, she and they are required to repay the government from any recovery in this case going to her or her children, all sums heretofore paid to her or them as compensation, and to credit the remainder upon future compensation to be paid, thus relieving the government therefrom to the extent of such recovery; and that the United States employees' compensation commission, through its attorney, solicited and procured plaintiff to commence this suit and that

under the compensation statute she was compelled to accede to this request or forfeit further compensation.''

The court, upon this phase of the case, charged the jury as follows:

''As bearing upon the question of the interest of these witnesses in the result of this case, you may consider the fact that the deceased was an employee of the government, and that as such employee bears a certain relationship under the law to the government with reference to compensation. That hasn't anything to do, as I have repeatedly said during the progress of this trial, with the right of the plaintiff to recover, if she is entitled to recover, full compensation for the injuries as administratrix of her deceased husband's estate. This question will only bear upon the subject of the interest of the witnesses and not upon the right of the plaintiff to recover, if you find she is entitled to recover.''

In *Marquette, etc., R. Co.* v. *Kirkwood,* 45 Mich. 51, 53 (40 Am. Rep. 453), it is said:

''The court also told the jury that if they found it necessary to consider the testimony given by the agents and employees of the railroad, they should bear in mind the interest they have in protecting their company and shielding themselves from blame. In doing this a very similar statement was made concerning the testimony of the packers in New York.

''While there may appear on the trial on direct or cross-examination such bias or behaviour as would authorize comment by counsel to the jury, we think it is not within the province of a court to instruct a jury, or suggest to them, that any suspicion attaches to the testimony of agents or servants of a corporation or individual by reason of their employment, or that they have any such interest as requires them to be dealt with differently from other witnesses. Even interested witnesses are now let in by statute,

and the policy pointed out by the statute indicates that the old presumption that interest will necessarily or probably lead to falsehood, was unjust and untrue."

The charge of the court was error.

Suppose most of the witnesses for defendant were users of gas furnished by the defendant gas company. As a matter of fact, no doubt they were such users. Would it be competent for the plaintiff to show that such witnesses had contractual relations with the defendant gas company; that in case a judgment for plaintiff against the defendant was rendered, this judgment, if paid, would ultimately be reflected in the rates charged and collected from the customers of the gas company, and that therefore the witnesses for the defendant were likely to be biased, prejudiced, and interested in favor of the defendant, and should the time of the court, jury, and witnesses be taken up with the trial of this collateral matter? Yet the interest of such witnesses on behalf of the defendant is much more direct than that of employees of the United States government in the cause of action of the plaintiff in this case.

The plaintiff alleges error upon the conduct of the counsel for defendant. In view of the law having been clarified since the trial of this case, we think the error complained of is not likely to again arise. There is no question about the general rule. *Phillips* v. *Benevolent Society,* 120 Mich. 142; *Kerr* v. *Manufacturing Co.,* 155 Mich. 191; *Thomas* v. *Township of Byron,* 168 Mich. 593 (38 L. R. A. [N. S.] 1186, Ann. Cas. 1913C, 686); *Grubaugh* v. *Simon J. Murphy Co.,* 209 Mich. 551.

As said in the latter case:

"If counsel, well learned in the law, choose to deliberately imperil the interests of their clients by

improper advertisement of a fact well known to be prejudicial to a fair and impartial consideration of the case by the jury, the resulting judgment should be set aside, even though the party who suffers is the innocent client instead of offending counsel."

Judgment reversed, and a new trial ordered.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.